UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONNA LEE MAY

        Plaintiff,

       v.                         **REPORT AND RECOMMENDATION**
                                          09-CV-00571 (GLS)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I. Introduction

In March 2005, Plaintiff Donna May filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since February 25, 2008, due to several impairments, including hereditary blindness in her right eye, significant blindness in her left eye, headaches, depression, anxiety, carpal tunnel syndrome, Lupus, and osteoarthritis. The Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through her attorney, Ms. Mary M. Withington, commenced this action on May 15, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 2, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

**II. Background**

The relevant procedural history may be summarized as follows: Plaintiff initially applied for SSI and DIB on March 21, 2005, alleging disability beginning on February 25, 2005 (R. at 77-80, 297-99).[1] Plaintiff alleged disability due to several impairments, including hereditary blindness in her right eye, significant blindness in her left eye, headaches, depression, anxiety, carpal tunnel syndrome, a possible diagnosis of Lupus,[2] and osteoarthritis. The applications were denied (R. at 32-35, 300-304). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 36-38). A hearing was held in Johnstown, New York, on August 7, 2008, before ALJ Terence Farrell (R. at 343-78). Plaintiff, represented by counsel, appeared and testified (R. at 351-52, 361-78). Mr. Robert Adler, a medical expert ("ME"), also testified (R. at 352-61). On September 25, 2008, ALJ Farrell issued a decision finding Plaintiff not disabled (R. at 14-25). Plaintiff filed a request for review of that decision (R. at 10). The ALJ's decision became the Commissioner's final decision on March 13, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 6-9).

Plaintiff, through counsel, timely commenced this action on May 15, 2009. (Docket No. 1). The Commissioner interposed an Answer on January 4, 2010. (Docket No. 10). Plaintiff filed a supporting Brief on February 18, 2010. (Docket No. 12). The Commissioner filed a Brief in opposition on May 20, 2010. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 11).
[2] The only evidence of Lupus was submitted directly to the Appeals Council and was therefore not available at the time of the ALJ's decision (R. at 5). The evidence submitted to the Appeals Council also fails to contain a definitive diagnosis of Lupus, only that a diagnosis was being considered (R. at 334-35). However, the Court assumes Plaintiff is contending that this possible diagnosis of Lupus also contributes to her alleged disability.

parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III. Discussion

#### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the

---

[4]

The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

  **B.**  **Analysis**

    **1. The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: the ALJ first found that Plaintiff met the insured status requirements of the Act through December 31, 2008 (R. at 16). He then found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 25, 2005. <u>Id.</u> At step two, the ALJ found Plaintiff's "hereditary blindness in right eye, vision loss in left eye, status post carpal tunnel release procedure of left wrist and osteoarthritis of both hands" to be severe impairments (R. at 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a Listed

impairment (R. at 18). The ALJ then found that Plaintiff retained the

> residual functional capacity to perform a wide range of light work . . . . Specifically, the claimant c[ould] lift, carry, push or pull 20 pounds; c[ould] frequently lift, carry, push or pull 10 pounds; c[ould] stand or walk for about 6 hours in an 8-hour workday; and c[ould] sit for about 6 hour in an 8-hour workday, but should avoid occupations requiring good depth perception

(R. at 19. Plaintiff's subjective complaints were found to be "not credible to the extent they [we]re inconsistent with the residual functional capacity assessment" (R. at 20). The ALJ found that Plaintiff was able to perform her past work of an assembler, as she actually performed it (R. at 23). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 24).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to obtain a consultative psychological evaluation; b) the ALJ erred in finding Plaintiff did not meet Listing 2.02; and c) the ALJ erred at various other points throughout the sequential evaluation. The Court will discuss each argument in turn:

### a) The ALJ Erred in Failing to Obtain a Psychological Evaluation

Plaintiff argues that the ALJ erred in failing to develop the record by obtaining a consultative psychological evaluation. Plaintiff's Brief, pp. 17, 23.

ALJs are instructed to obtain a consultative examination "[i]f the information [the ALJ] need[s] is not readily available from the records of [the claimant's] medical treatment source, or [he is] unable to seek clarification from [the claimant's] medical

6

source." 20 C.F.R. § 404.1512(f). For the following reasons, the Court agrees with Plaintiff that a consultative psychological or psychiatric examination was necessary in this case. The ALJ therefore erred in failing to obtain such an examination.

Plaintiff bases her disability claim largely on her alleged vision loss in both eyes. The ALJ's finding that Plaintiff was afflicted with "hereditary blindness in [her] right eye," is uncontested (R. at 17). However, Plaintiff's alleged vision loss in her left eye is substantially less clear. At the outset, it is apparent that the ALJ disbelieved Plaintiff's claim that her vision in her left eye is worse than 20/200, the threshold for disability. The record does document several findings of severe vision loss in Plaintiff's left eye. For example, while the signature is somewhat unclear, it appears ophthalmologist Dr. Jonathan Nickel found Plaintiff's left eye vision to be 20/400 on January 5, 2006 (R. at 216). Ophthalmologist Dr. Mina Chung found 20/400 vision on August 28, 2006, and 20/300 on January 17, 2007 (R. at 239-40). Finally, Dr. Chung stated that Plaintiff's left eye vision was 20/300 on March 16, 2007 (R. at 265). As will be discussed below, these findings are severe enough to meet Listing 2.02.

Complicating Plaintiff's claim is that no physician was able to identify a physical source for Plaintiff's left eye vision loss because the objective tests were largely unremarkable.[5] For example, an electroretinogram[6] completed in January 2007, was normal (R. at 239). Dr. Chung also noted that while an optical coherence tomography test "showed slight central thinning," she "d[id] not believe the thinning [wa]s enough to explain the level of visual acuity that [Plaintiff] appear[ed] to have" (R. at 265).

---

[5] Although Plaintiff suggests that Lupus may be the cause of her vision loss in the left eye, there is very little discussion by the professionals concerning this condition and it appears that none of the actors involved in this case has treated the claim seriously.

[6] An electroretinogram is "[a] record of the retinal action currents produced in the retina by an adequate light stimulus." Stedmans Medical Dictionary (27th ed. 2000), *available at* STEDMANS 127040 (Westlaw) [hereinafter Stedmans].

7

The unremarkable objective eye tests led Dr. Chung to rule out eye impairments like "retinal degeneration" and instead caused him to question whether Plaintiff was experiencing a functional vision loss ("FVL")[7] (R. at 218, 244-45, 265). Dr. Chung sent Plaintiff to ophthalmologist, Dr. Steven Feldon, to confirm this diagnosis (R. at 263, 265). Dr. Feldon found that "as [Dr. Chung] suspected, [Plaintiff] appear[ed] to have nonorganic vision loss" (R. at 263). Dr. Christopher Gabriels, the SSA consultative examining ophthalmologist, similarly noted that Plaintiff's poor vision could be due to "hysteria or psychosomatic issues," but would not "rest [his] diagnosis on that without excluding" other impairments (R. at 251). Dr. Adler, the ME who testified at Plaintiff's hearing, explained that a diagnosis of FVL could suggest that Plaintiff had a "psychological" or "mental" problem (R. at 355).

Thus, the record clearly indicates that several of Plaintiff's examining ophthalmologists were unable to determine the cause of Plaintiff's vision loss unless Plaintiff's apparent vision loss was due to a mental impairment. However, other than receiving some antidepressant medications from her primary care source,[8] Plaintiff was not undergoing psychological treatment during the relevant time period (R. at 278-84) and the record fails to contain any probative opinions addressing whether Plaintiff's mental functioning or FVL the source of her vision loss.[9] Moreover, because the record

---

[7] FVL (functional vision loss) is "an apparent loss of visual acuity or visual field with no substantiating physical signs; often due to a natural concern about visual loss combined with suggestibility and a fear of the worst." Stedmans 437160.

[8] The source's signature was illegible. There is no evidence from the record indicating that this source physician was either a psychologist or psychiatrist.

[9] The Court acknowledges that the record does contain two opinions of Plaintiff's mental functioning. However, neither opinion takes into account Plaintiff's FVL because Plaintiff's ophthalmologists began questioning that diagnosis after the mental medical opinions were generated. The first was completed by psychologist, Dr. Dalton Raymond, in June 2006 (R. at 200-212). Dr. Raymond was a consultative review psychologist and therefore did not personally examine Plaintiff. Also, Dr. Raymond's opinions were rendered before Dr. Chung began considering whether Plaintiff's vision loss resulted from FVL, and not an eye impairment (R. at 244-45, 265). The second opinion was submitted in August 2006, by Dr. Chung (R. at 217-18). Dr. Chung found that there was no evidence of any limitations in Plaintiff's mental functioning

fails to contain any treatment notes from Dr. Chung after Dr. Feldon's consultation, it is also unclear whether Plaintiff continued to undergo testing for possible eye impairments, underwent psychological testing, or whether Dr. Chung accepted a diagnosis of FVL. A psychological evaluation could have helped clear up this confusion. Despite this lack of evidence, the ALJ made no attempt to obtain a psychological evaluation. Furthermore, as discussed below, a consultative evaluation is particularly important here because Plaintiff's apparent vision loss, if it results from a mental impairment like FVL, would qualify her for a disability rating under the Listings. The Court therefore finds that this failure to properly develop the record constitutes error and necessitates remand. 20 C.F.R. § 404.1512(f); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (the ALJ's duty to develop the record exists regardless of whether Plaintiff has counsel or is continuing *pro se*).

    **b) The ALJ Erred in Finding that Plaintiff did not Meet Listing 2.02 Without Additional Testing and Investigation;**

  Plaintiff contends, generally, that the ALJ erred in failing to find that she met or medically equaled Listing 2.02 for vision loss. Plaintiff's Brief, pp. 14-19. Specifically, Plaintiff argues that Listing 2.02 does not require documentation of the impairment causing her vision loss. Id. Alternatively, Plaintiff contends that, if Listing 2.02 requires a medically determinable impairment, then either a psychological impairment or her lupus qualifies.[10] Id.

---

(R. at 217). However, at the time he rendered his opinion, Dr. Chung was still under the belief that Plaintiff's poor eyesight was likely due to retinal degeneration. Id.

[10] As previously discussed, although Plaintiff alleges that her lupus could cause her vision loss, the record fails to contain a definitive diagnosis of lupus. This evidence was also not available at the time the ALJ rendered his decision.

In order to meet Listing 2.02, a claimant must establish that the "[r]emaining vision in the better eye after best correction [wa]s 20/200 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff's right eye blindness is uncontested. Thus, Plaintiff's "better eye" is her left one and as discussed above, Plaintiff was found to have the necessary left eye vision loss at several points throughout the record, but her examining ophthalmologists were unable to determine a physical source for that loss.

The ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment (R. at 18). The ALJ specifically rejected Listing 2.02 because of the "medical expert['s] testi[mony] that the objective medical evidence d[id] not support a finding of blindness or severe vision loss in the claimant's better left eye" (R. at 19). The Court finds that the ALJ's reasoning is insufficient as to why Plaintiff did not meet Listing 2.02 because he failed to resolve the uncertainties concerning the underlying cause or causes of Plaintiff's vision loss.

Plaintiff first argues that Listing 2.02 does not require a cause of vision loss. Plaintiff's Brief, pp. 14-16. Plaintiff therefore argues that a physician's finding of less than 20/200 vision in her left eye is sufficient to be found disabled, regardless of its cause. Id. Due to some ambiguity in the Listings, Plaintiff's argument is not entirely baseless; however, because the ALJ has questioned the credibility of Plaintiff in her claim of vision loss in the left eye, cause, or the lack thereof, becomes the central focus of a determination of disability.

According to the Listings, the evidence necessary to establish less than 20/200 vision in a claimant's better eye depends on whether she is seeking SSI or DIB benefits. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, §§ 2.00(A)(4)(a), § 2.00(A)(3). DIB clearly

states that "[i]f there is a loss of visual acuity or visual fields, the cause of the loss must be documented." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 2.00(A)(4)(a). However, for SSI,

> the only evidence [the ALJ] need[s] to establish statutory blindness is evidence showing that [the claimant's] visual acuity in [her] better eye or [her] visual field in [her] better eye meets the criteria in 2.00(A)(2),[11] provided that those measurements are consistent with the other evidence in [the claimant's] case record. [The ALJ] do[es] not need to document the cause of [the claimant's] blindness.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 2.00(A)(3) (citations omitted). Thus, while DIB requires a documented cause of vision loss, SSI does not do so.

However, in order to find that Plaintiff met Listing 2.02 without a documented medically determinable impairment capable of causing vision loss, the Court would be required to ignore a basic principle of the Act: that disability must be based on a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A). Dr. Adler, the ME who testified at Plaintiff's hearing, explained that a physician could find severe vision loss if Plaintiff lied during the examination (R. at 355). Thus, the Court cannot find that Plaintiff meets Listing 2.02 without first establishing a medically determinable impairment. Here, it is not clear from the record whether Plaintiff did indeed have a medically determinable impairment (such as FVL), or as questioned by the medical expert, was simply misrepresenting her vision during her eye examinations. As discussed above, further development of the record on this issue is required to determine whether Plaintiff has the necessary medically determinable impairment to meet Listing 2.02.

The Court therefore finds that the ALJ erred in failing to further investigate the potential for a non-organic cause of Plaintiff's vision loss.

---

[11] "The Act defines blindness as visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 2.00(A)(2).

Parenthetically, the Court notes that Plaintiff has engaged in activities consistent with a loss of vision. For example, Plaintiff testified that she sought assistance with the Association for the Blind and received various products to assist her in everyday life (R. 371, 372). Plaintiff also testified that her "driving privileges" were revoked by her physician two years prior to the hearing (R. at 366). Furthermore, as of December 2006, Plaintiff "[wa]s registered as legally blind with the Commission for the Blind and Visually Handicapped in accordance with New York State Law, Section 8704"[12] (R. at 144). Although findings from other agencies are not binding on the Commissioner, Plaintiff's registration as blind with New York State certainly supports her claim of vision loss. See Social Security Ruling 06-03p, 2006 WL 2329939 at *7 (S.S.A.) ("Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, [the ALJ is] not bound by disability decisions by other . . . agencies. . . . However, the adjudicator should explain the consideration given to these decisions in the notice of decision . . . .").

Therefore, after a psychological evaluation has been completed, the ALJ must consider whether Plaintiff's impairments meet or medically equal Listing 2.02.  (20 C.F.R. § 404.1526). The Court will not, however, as Plaintiff contends, recommend remand solely for calculation of benefits because not all of Plaintiff's examining ophthalmologists found the necessary vision loss in Plaintiff's left better eye. For example, Dr. Gabriels, the SSA examining ophthalmologist, found 20/100 in Plaintiff's left eye (R. at 250).

---

[12] Strikingly similar to Listing 2.02, according to Section 8704 of New York State Law, "[a] blind person shall mean a person who has central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." McK.Unconsol.Laws § 8704.

12

### b) The ALJ's Remaining Findings Throughout the Sequential Evaluation are Necessarily Flawed

Plaintiff argues that the ALJ erred at several points throughout the remainder of the sequential evaluation. Specifically, Plaintiff contends that the ALJ erred in failing to find her anxiety and depression to be severe impairments, the RFC was not supported by substantial evidence, and the ALJ failed to adequately evaluate her subjective complaints. Plaintiff's Brief, pp. 17-21.

The Court has recommended remand for failure to properly develop the record by obtaining a psychological or psychiatric evaluation. Thus, the ALJ's remaining findings throughout the sequential evaluation are necessarily flawed.

## IV. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly develop the record by obtaining a consultative psychological or psychiatric evaluation.

## V. Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

_____

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: May 24, 2011

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

    Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

_____
Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED:    May 24, 2011